### THOMAS J. COFFEY *vs.* JOHN J. COFFEY.

Essex. November 8, 1911. — January 3, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Partnership. Contract,* Construction. *Equity Jurisdiction,* Accounting between partners.

In a suit in equity by one of two partners in the liquor business against the other, it appeared that during a period of about four years the plaintiff and the defendant, who were brothers, had been partners in the business, which had been very profitable in the years in which licenses for the sale of intoxicating liquors were granted in the city in which the business was carried on and at other times, when only "soft drinks" were sold, barely paid expenses, and that by mutual agreement the defendant assumed the entire business management, the plaintiff acting as bartender and doing such other inside work as the business required, that each partner was to draw $15 a week during license years and $10 a week during other years, but that no balance was struck to determine the respective interests of the partners in the accumulated profits, that the plaintiff, having been refused an accounting by the defendant, employed an expert account-

ant, who examined the books and accounts of the firm and made a report, that thereafter the defendant for the purpose of making a division of profits up to that time, and taking as a basis the amount of money on deposit in a national bank drew a check payable to the plaintiff's order for about $5,000, which without the plaintiff's knowledge he deposited to the plaintiff's credit as his share of the profits, that this was done just before the first day of May of a certain year, which was the end of the last license year during the partnership, and that the next year was to be a no-license year, that on the first day of May mentioned the defendant "withdrew from active management of said firm and ceased to take any part in the firm affairs," that, after many conferences and under the advice of counsel, a contract in writing was drawn and was executed by the plaintiff and the defendant. The contract recited that it was mutually agreed to terminate the partnership, that the affairs of the firm were still unsettled, that it had assets on hand and demands and claims due it and unsettled firm matters which had to be adjusted and closed up, and that, "in order to bring about a final and full settlement of the business affairs of said firm," the parties entered into the agreement. The contract then provided that the stock of liquors on hand on the first day of May mentioned should be valued by appraisers to be chosen for that purpose, that any liquors which might have been taken from that stock since the first day of May or any money collected on claims of the firm since that day by either of the partners should be accounted for, that removable fixtures and other personal property and any uncollected claims of the firm should be appraised by the same appraisers, that the appraised property should be apportioned between the parties by their mutual consent or by the appraisers, and that the appraisers should be paid out of the funds of the firm. The contract then concluded as follows : " After the division of said personal property at its appraised value, the balance of the firm money shall be divided between the parties, so that after taking into account any accounting for liquors or moneys collected or claims settled as provided in this instrument, there shall be a balance arrived at between the parties." The plaintiff contended that the settlement was only a partial one relating to the assets on hand on the first day of May mentioned and that it did not include any matters in dispute before that time. *Held,* that the contract of settlement was a final one into which all claims were merged and was a bar to the suit for an accounting, the plaintiff's only remedy being on the contract in case the defendant had failed to carry out its provisions.

BILL IN EQUITY, filed in the Superior Court on July 3, 1908, by one brother against another, for an accounting between the two as partners in a wholesale and retail liquor business carried on by them in Newburyport in the years 1903, 1905 and 1906, and also in a " soft drink " business carried on by them in 1902 and 1904, which were no-license years in that city.

The contract between the parties of March 10, 1908, referred to in the opinion, was as follows :

" This agreement made and entered into this tenth day of March, 1908, by and between John J. Coffey, Newburyport, Commonwealth of Massachusetts, party of the first part, and

Thomas J. Coffey of said Newburyport, party of the second part, witnesseth, that:

" Whereas the said parties have heretofore been engaged as partners under the firm name and style of Coffey Brothers, in the liquor and hotel business, and it is mutually agreed to terminate said partnership, and Whereas the affairs of said firm are still unsettled, it has assets on hand and demands and claims due it, and unsettled firm matters which have to be adjusted and closed up.

" In order to bring about a final and full settlement of the business affairs of said firm, said John J. Coffey and Thomas J. Coffey do now enter into this agreement, each binding himself to faithfully carry out the same.

" First. All liabilities of the firm to be paid out of the funds of the firm.

" Second. The stock of liquors which were on hand May first, 1907, shall be valued by appraisers, two to be chosen, one by each party, and the two so chosen to select a third.

" Any liquors which may have been taken from said stock since May 1st, 1907, or any money collected on claims of the firm since said May 1st, 1907, by either of said partners, shall be accounted for.

· " The furnishings in the Adams House belonging to said firm shall be appraised, as also the bar, drainer, piping and registers, straiter pump, and other personal property in the stores and store houses, and also any uncollected claims of the firm, by the aforesaid appraisers.

" Third. The rent for said stores and said Adams House which may have been paid by either member of the firm shall be considered a firm liability.

" Fourth. Either party may take any of the property at its appraised value and be charged therefor. In case a portion of said personal property is not divided by mutual agreement, it may be apportioned by said appraisers at its appraised value.

" Fifth. The appraisers shall be paid out of the funds of the firm.

" Sixth. After the division of said personal property at its appraised value, the balance of the firm money shall be divided between the parties, so that after taking into account any ac-

counting for liquors or moneys collected or claims settled as provided in this instrument, there shall be a balance arrived at between the parties.            " John J. Coffey.

Thomas J. Coffey."

The case was referred to Thomas C. Simpson, Esquire, as master. The material facts found by the master are stated in the opinion.

The case was heard by *Bell*, J., upon the defendant's exceptions to the master's report. The judge made a final decree, confirming the master's report and ordering that the defendant pay to the plaintiff the sum of $3,409.30, with interest from September 24, 1908, at the rate of six per cent per annum, and that the plaintiff also recover $62.46 as costs. The defendant appealed.

*A. Withington*, for the defendant.

*R. L. Sisk & J. H. Sisk*, for the plaintiff.

HAMMOND, J. The main question is whether the contract dated March 10, 1908, is a bar to this action. The master has found that the contract was drawn up and agreed to by the respective attorneys of the plaintiff and the defendant "after a series of conferences, [and] that there was no fraud or deceit practised or attempted by either party thereto." The question therefore is, as stated by the master, simply one of construction.

The partnership began about May 1, 1902, and continued until March 10, 1908, when it was terminated by mutual agreement. The business which was carried on in the city of Newburyport in this State consisted, in " no-license " years, of the sale of "soft drinks, cigars, etc.," to which was added, in " license " years, the sale of intoxicating liquors, under licenses granted to the firm. The " license " years were from May 1, 1903, to May 1, 1904, and from May 1, 1905, to May 1, 1907. The business was very profitable during " license " years, but at other times it barely paid expenses. By mutual agreement the defendant assumed the entire business management, making all purchases, paying all bills, making all deposits in the bank and drawing all checks, and keeping the books of the firm, " so far as any were kept." The plaintiff acted as bar tender and did such other

inside work as the business required. This arrangement continued until May, 1907, when the defendant withdrew from the active management and "ceased to take any part in the firm affairs, but commencing July 3, 1907, and continuing to the dissolution of the partnership, the firm business dealing in soft drinks and cigars, was conducted by" the plaintiff in his own name. From May 1, 1903, to the close of the last "license" year on May 1, 1907, the firm leased the rooms over their store known as the Adams House. These rooms were in part occupied by the plaintiff with his family, and in part rented to lodgers. The rent of such rooms as were let was collected by the plaintiff until May, 1905, after which time it was collected by the defendant.

The master has found that during the entire time of the partnership up to May, 1907, there was no proper division of profits. Each party was to draw $15 a week during the license years, and $10 a week during other years, but no balance ever was struck to determine the respective interests of the partners in the accumulated profits except as follows: In August, 1906, the plaintiff, having frequently theretofore requested of the defendant an accounting but all to no avail, and suspecting that he was being defrauded of his share of the profits, employed an expert accountant to examine the books and accounts of the firm and make a report. The expert did so; and the master has found that the report of the expert was exhaustive and that it presented a fair and equitable account of the real standing of the partners in so far as it was possible to strike a balance by any available data or to arrive at any basis of settlement. On April 4, 1907, the defendant for the purpose of making a division of the profits accumulated up to that time, taking as a basis therefor the amount of money on deposit in a national bank on the previous day, without his partner's knowledge or consent, drew a check to his own order for $4,427.26, which check he deposited to his own personal account. Subsequently, on June 19, 1907, he drew a check payable to the order of the plaintiff, as his share of the profits, of $4,852.26. The defendant indorsed the plaintiff's name thereon and deposited the same in a national bank in Newburyport to the plaintiff's order without his knowledge, the plaintiff not being made aware of this transaction until

informed by the bank in July, 1907. "The difference in the amounts of the two checks was accounted for by the defendant in consequence of charging to himself certain loans made by him out of partnership funds and other money amounting to $425, for which he admitted liability." This division left a small balance in the bank to settle the partnership business. The master has found "this act on the part of the defendant arbitrary and based on no proper accounting. It was 'simply a division of the partnership balance then standing to the credit of the partnership in the bank." Before the agreement of March 10, 1908, there seems to have been no other settlement between the parties.

During the existence of the partnership "many checks" had been "drawn by the defendant perhaps for business purposes, but the checks themselves and the books containing them have disappeared and no memoranda to show the purpose for which they were used is in existence. Also that a number of checks have been indiscriminately torn from the check books in evidence and no memoranda made of same on stubs and no satisfactory explanation given." The master also finds that some checks and at least one account book were missing, and generally that the books and accounts were not well kept.

With this history behind them and under these circumstances the parties signed the contract dated March 10, 1908. What is the fair construction of it? The defendant contends that it provides for a full and final settlement of all partnership affairs and all matters of dispute between the parties. The plaintiff contends that it "was intended for and provided only for the settlement of certain partnership assets fully set forth therein, and in no sense provides for the settlement of any matters in dispute prior to May 1, 1907," and that it is in no way a bar to the right of the plaintiff for an accounting for the period before that time.

The document recites that whereas the parties have been engaged as partners in the liquor and hotel business, and have agreed to terminate the partnership, and "the affairs of said firm are still unsettled," that "it has assets on hand and demands and claims due it, and unsettled firm matters which have to be adjusted and closed up," now therefore, "in order to bring about

a final and full settlement of the business affairs of said firm," they enter into the agreement, each binding himself faithfully to carry out the same.

It then provides in the first clause that the liabilities of the firm are to be paid out of the funds of the firm; in the second clause that the liquors which were on hand May 1, 1907, shall be appraised by persons to be chosen for that purpose; that any liquors which may have been taken from the stock since May 1, 1907, or any money collected on claims of the firm since May 1, 1907, by either of the partners, shall be accounted for; that the " furnishings in the Adams House belonging to the firm as also the " fixtures " and other personal property in the stores and store houses, and also any uncollected claims of the firm," shall be appraised by the above mentioned appraisers; in the third clause, that the rent for the stores and the Adams House which may have been paid by either member of the firm shall be considered a firm liability; in the fourth clause, that the appraised property may be apportioned between the parties by their mutual consent or by the appraisers; in the fifth clause, that the fees of the appraisers shall be paid out of the funds of the firm; and in the sixth clause, that after the division of the personal property at its appraised value, " the balance of the firm money shall be divided between the parties, so that after taking into account any accounting for liquors or moneys collected or claims settled as provided in this instrument, there shall be a balance arrived at between the parties."

Briefly summarized, the purpose of the instrument is to make a final and full settlement of the firm affairs and to that end it provides for the distribution of the liquors which were on hand May 1, 1907, the end of the last license year, and of the other personal property, for the payment of the liabilities of the firm including the rent of the store and Adams House and the fees of the appraisers. Nothing is said about the accounting by either party for any money collected before May 1, 1907. The sixth clause provides for liquors or for money collected " as provided in this instrument," that is for liquors taken and money collected since May 1, 1907.

It is to be noted that this instrument was not signed hastily or inadvisedly, but after many conferences and under the advice

of counsel. It was the declared purpose of the instrument to make a final and full settlement of the affairs of the firm. Just before May 1, 1907, the plaintiff had received a check for several thousand dollars as the share of the profits up to that time said by the defendant to be due him. Since then the business had been conducted wholly by the plaintiff for about eight months, and he had made nothing. The next year, from May, 1907, to May, 1908, was to be a no-license year, and the firm had concluded to dissolve. There was no occasion for a partial settlement. A final and full settlement was the thing desired, and it was to be brought about by this agreement. The only accountability for money collected was to be confined to money collected after May 1, 1907. We are of opinion that everything was merged into this agreement. Such is the interpretation suggested by the circumstances and such is its plain language.

It is admitted, as the master states, that the division provided for in this contract has taken place. The only remedy of the plaintiff is upon the contract.

The result is that the decree must be reversed and the bill dismissed. It is

*So ordered.*